UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
|  | ) | |
|  | ) | No. 3:07-CR-89 |
| V. | ) | (Phillips / Guyton) |
|  | ) | |
|  | ) | |
| GRAY JORDAN, | ) | |
| JULIA NEWMAN, | ) | |
| SHERRY FARMER, | ) | |
| WILLIAM JORDAN, | ) | |
| MELVIN SKINNER, and | ) | |
| SAMUEL SKINNER | ) | |

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
|  | ) | |
|  | ) | No. 3:07-CR-44 |
| V. | ) | (Phillips / Shirley) |
|  | ) | |
|  | ) | |
| SCOTT WILLYARD | ) | |

**JOINT MEMORANDUM AND ORDER**

All pretrial motions in the above two cases have been referred to the undersigned Magistrate Judges pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This matter came before the Courts for a hearing on the pending motions of the United States to join the trial of the defendants in the United

States v. Jordan, at al., 3:07-CR-89,[1] case with those charged in United States v. Ramirez, et al, 3:07-CR-44.[2] Both cases are to be tried before District Court Judge Thomas W. Phillips. On July 16, 2008, Magistrate Judge H. Bruce Guyton conducted a hearing on the merits of the government's proposed joinder in conjunction with a hearing on the same issue conducted by Magistrate Judge C. Clifford Shirley, Jr. in the Ramirez case. Both Magistrate Judge Shirley and Magistrate Judge Guyton join in the ruling stated herein.

### A. BACKGROUND

The prosecution of Melvin Skinner and Samuel Skinner began with their indictment on July 18, 2006, in United States v. Skinner, et al, 3:06-CR-100. The prosecution of Gray Jordan, Julia Newman, Sherry Farmer and William Jordan began with their indictment on August 1, 2006, designated as United States v. Jordan, 3:06-CR-102. On April 17, 2007, a grand jury issued an indictment in United States v. Ramirez, et al, 3:07-CR-44, commencing the prosecution of eight defendants in that case. On July 18, 2007, the government moved to consolidate United States v. Skinner, et al, 3:06-CR-100 and United States v. Jordan, 3:06-CR-102 into a single case, evidently after a number of defendants resolved their charges short of trial. On August 22, 2007, that request was granted over the objection of all six remaining defendants in both cases. United States v. Jordan, et al., 3:07-CR-89 is the resulting consolidated case. On April 23, 2008, the United States moved to join Jordan and Ramirez for trial. The Jordan case was then scheduled to proceed to trial on May 20, 2008. The trial in the Ramirez case was set to begin August 12, 2008. On April 30,

---

[1] Motion for Joint Trial [Doc. 72]

[2] Motion for Joint Trial [Doc. 262]

2008, Ramirez defendant Scott Willyard filed a Motion Opposing United States' Motion for Joint Trial. Ramirez [Doc. 268].

On April 28, 2008, the Jordan case came before this Court for the previously scheduled Pretrial Conference. At that time, the defendants requested time to file written responses to the Motion for Joint Trial, and the Court granted them 10 days in which to do so. No argument was had on that date, but a hearing was scheduled for May 6, 2008. The Court specifically asked counsel to address the prejudice to the Jordan defendants that may result from joinder and associated trial delay.

On May 5, 2008, defendants Melvin Skinner, Samuel Skinner and Gray Jordan filed responses. Respectively, Jordan [Doc. 77]; [Doc. 74]; and [Doc. 76]. The chambers of this Court notified counsel for Willyard that his opposition would be heard at the same time as the Jordan hearing on May 6, 2008.

On May 6, 2008, the Jordan defendants asked the Court to hold in abeyance any ruling on the proposed joinder until they had further opportunity to investigate and review the issues. The Court entered an Order [Doc. 84] granting that request and continuing the May 20, 2008, trial date to August 12, 2008, to permit adequate time for resolution of the government's motion. On May 20, 2008, the United States filed a Motion for Joinder and Renewed Request for Joint Trial [Doc. 92]. Nothing further was filed by the Jordan defendants or Willyard, now the sole defendant in the Ramirez case proceeding to trial.

At the joint hearing on July 16, 2008, Robert Vogel was present on behalf of Willyard. Ralph Harwell and Tracy Smith were present on behalf of their client Melvin Skinner. Michael McGovern was present on behalf of Samuel Skinner. Randall Reagan and Jeffrey Whitt were

present on behalf of Gray Jordan. Mark Sallee participated by telephone on behalf of his client, William Jordan. Sherry Farmer was excused from participation in the hearing, having executed a plea agreement with the government.[3] Assistant United States Attorney Hugh Ward represented the government.

### B. MOTIONS FOR JOINT TRIAL

#### *1. Position of the Government*

In its requests to join these two cases for trial, the government states that the sole remaining defendant for trial in the Ramirez case will be Willyard. Ramirez, [Doc. 262 at 1]. The government anticipates the proof in Willyard's trial will be almost the same as that to be presented in Jordan because both cases charge segments of the principle conspiracy in United States v. James Michael West, 3:06-CR-92 ("West"). Ramirez, [Doc. 262 at 2]. The government states that it has previously provided the same discovery materials to all defendants in the Ramirez and Jordan cases and that most of the materials connecting the cases have been part of the public record in court documents. [Doc. 72 at 2]. The United States lists the numerous plea agreements, with factual basis entered in the related cases and directs the Court's attention to the detailed facts provided in evidentiary hearings and government pleadings throughout Jordan, Ramirez and West. [Doc. 72 at 2-3]. The United States argues that the two cases should be tried together because these defendants could have

---

[3] All defendants in the Jordan case have been released pending trial and their presence at the hearing was previously excused as they all reside outside this district. Although her case has been severed for trial, and all proceedings stayed pending her pro se interlocutory appeal to the Sixth Circuit, Julia Newman was present with her counsel David Wigler and Brent Austin (who have moved to withdraw from her case). Aside from a brief statement made by Mr. Wigler as the hearing commenced, Ms Newman nor her attorneys participated in the substance of the hearing.

been joined in a single indictment and it would be the most efficient use of the court's resources. [Doc. 72 at 3]; Ramirez, [Doc. 262 at 2].

In addition to the pretrial motions filed with the Court, at the July 16, 2008, the United States presented oral argument in support of a joint trial. The Jordan defendants having previously requested additional time to review the factual interrelationship of the two cases before proceeding at a hearing, the government asked the Court to now consider the facts available in the record to all defendants in support of a joint trial. AUSA Ward noted that as of this month, Samuel Skinner and Melvin Skinner have been charged for two years. Since that time, both this Court and Magistrate Judge Shirley have conducted several motions hearings and have received the testimony of many witnesses as to the facts of these two cases, to include alleged co-conspirators to both defendants Skinner and Willyard. Further, a number of defendants in these two cases have reached plea agreements with the United States which have included a factual basis filed with the District Court. AUSA Ward also stated that all defendants in the two cases have received affidavits executed in support of wiretap applications, which set forth the government's case in some detail. AUSA Ward also noted that Magistrate Judge Shirley has made factual findings in support of venue in the Eastern District of Tennessee for the prosecution of Willyard which describe the interrelation of that case with the overall conspiracy alleged to have been headed by James Michael West. The government also drew the Court's attention to proposed jury instructions filed by the prosecution in anticipation of an earlier trial date as well as two memoranda of law setting forth the government's position regarding reasonably anticipated evidentiary issues at trial, likewise filed as part of the public record available to all defendants. AUSA Ward stated that the government is ready to proceed to trial on August 13, 2008, and urged the Court to consider the public interest served by a speedy trial. The

United States relied on Rule 13 of the Federal Rules of Criminal Procedure, which provides the basis for joinder of similar cases for trial.

## *2. Position of the Defendants*

A) Scott Willyard

Willyard has filed an objection to the government's Motion for Joint Trial. Ramirez, [Doc. 262]. Willyard asserts substantial prejudice by joinder for trial with Jordan defendants, with a serious risk of compromise of specific two trial rights: first, the admission of otherwise inadmissible evidence; and second, an effective denial of right to confront and cross-examine witnesses against him. While it is not necessary to repeat each of Willyard's arguments, the Court has endeavored to distill his principal objections as follows.

Willyard also argues that a joinder would extend the dates of the conspiracy in which he is alleged to have participated. In his current case, the conspiracy ends July 16, 2006; in Jordan it ends August 3, 2006. Willyard is not certain how this might affect him, but he raises the issue out of an abundance of precaution. The Court is aware from the strident opposition to joinder of the original Jordan and Skinner cases that this date extension may add a gun and more drugs to the overall conspiracy, as reflected in the record. Willyard argues that a joinder would serve as an impermissible amendment to his indictment because the conspiracy count in Jordan adds an allegation of violation of § 841(a)(1) and no grand jury has passed on such amendment. At a minimum, it will involve the introduction of evidence unrelated to him or the charges against him.

Willyard argues that the United States has filed notice of intent to present five expert witnesses in Jordan; there has been no notice of expert testimony in Ramirez.[4] Attorney Vogel

---

[4] The government has since filed a notice of its intent to present certain expert testimony, including forensic chemists, a drug-detecting dog expert and DEA Special Agent Lewis as an

stated that the proposed forensic chemist experts do not present a joinder issue, but the remaining two experts may. First, in Jordan the government proposes to present testimony from Kevin Pyeatt, a "dog sniff expert" who is expected to testify as to a "free air sniff" related to the Skinner stop and search. Willyard's written response argues that this testimony is likely to create negative inferences about his own guilt because Willyard was also the subject of a traffic stop where marijuana was discovered. The second objectionable witness to testify at the Jordan trial is DEA Special Agent David Lewis, who is expected to offer testimony about drug dealers and how they operate. Willyard objects to this expert being incorporated into his trial by means of the proposed joinder.

    Willyard also argues that, despite the government's representations, he did not receive the same discovery materials as the Jordan defendants. Attorney Vogel reports that he has compared his discovery with the United States' notices of discovery filed in the Jordan case and identifies the items in the response. These materials might be another basis for objection to the joinder, but counsel cannot say without seeing them. The insertion of this additional material into Willyard's defense, however, would likely result in overall delay for all defendants because it may necessitate late-filed motions as to admissibility at joint trial.

    Willyard also argues that, taking the government's allegations in their best light, his own involvement in the conspiracy was de minimus. The response states that a joint trial would further prejudice Willyard by requiring him to present his defense alongside the other, more involved, defendants. A joint trial would create an environment replete with a "spillover effect" of evidence presented at a joint trial which does not presently exist.

---

authority on narcotics distribution enterprises. [Doc. 278].

At the July 16, 2008, hearing, Attorney Vogel chiefly relied upon his arguments as set forth in his original written response and maintained a strident opposition to joinder with the Jordan defendants. Attorney Vogel stated that, while additional time would always be of assistance in trial preparation, he and Willyard are prepared to proceed to trial on August 13, 2008, as scheduled. When asked to address the most pressing anticipated unfair prejudice to Willyard by the proposed joinder, Attorney Vogel argued that joinder with the Skinners presents the most concern. Attorney Vogel argued that Willyard is alleged to have operated in the role of drug courier (or "mule") within the charged conspiracy in the Ramirez case. He believes the government will present evidence that Willyard was the subject of a traffic stop that revealed his transport of a large amount of drugs on behalf of another person. Attorney Vogel argued that Melvin Skinner and Samuel Skinner were, similarly, the subject of a traffic stop in which police discovered a large amount of drugs being transported on behalf of another person and/or another alleged conspiracy. The proposed joint trial of multiple persons acting in the role of courier, along with the anticipated testimony that these were only examples of multiple shipments of drugs for the overall conspiracy over an extended period of time, would unfairly prejudice Willyard in comparison to the trial he faces now. Attorney Vogel argued that Willyard will be required to effectively defend against the testimony offered against the Skinner defendants because of the similar role alleged to have been performed by the Skinner defendants and himself, unique to the charged conspiracy and distinct from the other defendants on trial. In addition, the Court notes that Willyard, unlike all the Jordan defendants, has been detained pending trial, since July 3, 2007.

B) Gray Jordan

Gray Jordan has also filed a written response. [Doc. 76], in which he described the government's statements in support of joint trial as conclusory and requested an evidentiary hearing in order to develop a factual record upon which he can base his position on a joint trial, requesting leave to file a post-hearing brief after any such hearing. [Doc. 76 at 2]. Jordan also stated that he had received materials from the prosecution just a few days before, which may have a bearing on his position after a reasonable opportunity to review them. [Doc. 76 at 1].

At the July 16, 2008, hearing, Attorney Reagan argued against the proposed joinder on behalf of Gray Jordan. Attorney Reagan argued that the two cases were indicted separately for good cause: that the Jordan case and the Ramirez case were separate drug conspiracies. Attorney Reagan argued that the alleged time period of participation by some defendants did not overlap with that of Willyard, and that the cases are geographically distinct. Attorney Reagan argued that the presentation of the government's proof at trial would lead to confusion on the part of the jury and could not afford a fair trial to Gray Jordan and the other defendants.

C) Melvin Skinner

Attorney Harwell argued in opposition to the proposed joinder on behalf of Melvin Skinner. During Attorney Harwell's remarks, Attorney Sallee and Attorney McGovern indicated their agreement and adopted his arguments. Melvin Skinner's initial response, filed at [Doc. 77], informed the Court that he did not have adequate information upon which to determine his position as to a joint trial, asking that the Court set an evidentiary hearing on the facts that would support joinder and requests leave to file a post-hearing brief once the record has been developed. [Doc. 77 at 2]. At the July 16, 2008, hearing, Attorney Harwell stated opposition to the proposed joinder,

however, because the proposed joinder would work particular prejudice to the Skinner defendants. Attorney Harwell observed that Melvin Skinner and Samuel Skinner were arrested in July, 2006, and charged in a conspiracy to distribute narcotics and also in a substantive count arising from their stop and arrest. In comparison, Willyard was stopped, arrested and charged in January, 2006, and was detained pending trial. Willyard, therefore, was not even available for the Skinner defendants to have conspired *with* because he was jailed (and his participation in the conspiracy thereby terminated) before authorities were even aware of the Skinner defendants. Attorney Harwell also argued that none of the activities ascribed to Willyard by the government can be said to relate to any role the Skinner defendants are alleged to have played in the conspiracy.

    D) Samuel Skinner

In his written response, filed at [Doc. 74], Attorney McGovern stated that Samuel Skinner "does not object to the Government's motion to join the trial" of Jordan with Ramirez, so long as the joinder resulted in a continuance of the trial to the August 12, 2008, trial date set in the latter. At the hearing, Attorney McGovern reversed his position and joined with the arguments made by Melvin Skinner. Attorney McGovern did not assert additional argument.

    E) William Jordan

Attorney Sallee did not present additional oral argument in opposition to the proposed joinder, but indicated his agreement with those offered by co-defendants' counsel.

*3. Analysis*

The Federal Rules of Criminal Procedure provide for the joint trial of separate indictments in Rule 13, which reads:

> The court may order that separate cases be tried together as though brought
> in a single indictment or information if all offenses and all defendants could

have been joined in a single indictment or information.

Federal Rules of Criminal Procedure, Rule 13

"The Federal Rules of Criminal Procedure liberally encourage the joining of parties and charges in a single trial." Ashe v. Swenson, 397 U.S. 436, 455 (1970) (footnote reference excluded). Rule 8(a) provides for joinder of charges that are similar in character, or arise from the same transaction or from connected transactions or form part of a common scheme or plan. Rule 8(b) provides for joinder of defendants. Rule 13 provides for joinder of separate indictments in a single trial where the offenses alleged could have been included in one indictment. "These rules represent considered modern thought concerning the proper structuring of criminal litigation." Ashe, 397 U.S. at 455. "There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials play a vital role in the criminal justice system." Zafiro v. United States, 506 U.S. 534, 537 (1993). This preference is tempered, however, where "joinder, even when proper under Rule 8(b), may prejudice either a defendant or the Government." Zafiro, 506 U.S. at 538. Rule 13 is permissive rather than mandatory, and even when trying the cases together is permitted, it is still within the court's discretion to try the cases separately. See, Wright, Federal Practice and Procedure § 215. In Zafiro, the Supreme Court cited instances where prejudice to a defendant may well outweigh the value of a joint trial:

> When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here. When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in Richardson v. Marsh, less drastic

measures, such as limiting instructions, often will suffice to cure any risk of prejudice.

Zafiro, 506 U.S. at 539 (internal citations omitted).

In exercising its discretion the court should weigh the efficiency and convenience of a single trial against the risks of prejudice to the defendant from a single proceeding. As a threshold matter, the Court observes that Willyard is prepared to proceed to trial on August 13, 2008, as scheduled. The United States has also announced it is prepared to proceed with the trial on that date. The Jordan defendants announced at the July 16, 2008, hearing that they are not prepared to go to trial on that date. At the hearing, more than one of the defense counsel present indicated a misunderstanding that the case was even set for trial on August 13, 3008, and Attorney Whitt stated that he has a long-scheduled state trial to begin that day. Attorney Reagan stated that his client intends to present testimony from three out-of-state witnesses, but will be seeking funding from the court for those expenses. Attorney Harwell, Attorney McGovern and Attorney Sallee each expressed that they would not be prepared to proceed to trial August 13, 2008, if the cases were consolidated.

While under ordinary circumstances, a defendant charged with others would be bound to suffer their various delays, in this case it would be the Court itself imposing this form of delay upon Willyard, who, alone, has been detained pending his trial. See 18 U.S.C. § 3161(g)(7). The efficiency gained by joining the trials is outweighed by the substantial delay to be borne by Willyard, who was charged *before* the government moved to consolidate the Jordan and Skinner cases in July 2007. Many of the same arguments were made by the prosecution in support of that consolidation request at a time when the Ramirez case was also pending, yet no request was made

to join all three cases, despite the fact that the government has maintained a consistent position that all the cases are related to the Mike West conspiracy.

Aside from the untimely delay to be necessarily incurred by Willyard, this Court has significant doubts about the fairness of trying the Jordan case and the Ramirez case together. Given the entirety of the record in these two cases, the Court finds the prejudice to Willyard of a joint trial with the Jordan defendants is substantial and unfair. As the Supreme Court has observed, in considering the propriety of a joint trial for 34 conspirators:

> When many conspire, they invite mass trial by their conduct. Even so, the proceedings are exceptional to our tradition and call for use of every safeguard to individualize each defendant in his relation to the mass. Wholly different is it with those who join together with only a few, though many others may be doing the same and though some of them may line up with more than one group.

Kotteakos v. United States, 328 U.S. 750, 773 (1946).

The relationship between Willyard and the Jordan defendants does not compel joinder. While the law of conspiracy may permit a joint trial for co-conspirators, the Court finds that the absence of a relationship between Willyard and the Jordan defendants is a factor for consideration in the request for joinder, as the defendants are currently charged in separate indictments. "If this comes down to a difference of degree, it is still one of vital importance as such differences always come to be when degrees spread farther and farther apart." Kotteakos, 328 U.S. at 774 n29.

Willyard and the Skinner defendants would be specifically unfairly prejudiced by the joinder. Ordinarily, prejudice incurred as the result of evidence against a co-conspirator would not merit a separate trial, as no right to a severance arises because the evidence against one defendant is "far more damaging" than the evidence against another. United States v. Causey, 834 F.2d 1277, 1288 (6th Cir. 1987), cert. denied, 486 U.S. 1034 (1988). In this circumstance, the tenuous

13

connection between Willyard and the Skinner defendants, all alleged couriers, casts a different light on the expert testimony anticipated in the Jordan case. The Court finds there is a significant risk of substantial and undue prejudice due to the spillover evidence against the Skinner defendants as to Willyard. See United States v. Lopez, 309 F.3d 966, 971 (6th Cir. 2002) cert.denied, 537 U.S. 1244 (2003). While a limiting instruction to the jury would be curative in most instances, "the rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process. " Richardson v. Marsh, 481 U.S. 200, 211 (1987). Had Willyard been originally charged with the Jordan defendants, the prospect of a curative instruction might appear more reasonable. Until this time, Willyard has been charged in only the Ramirez conspiracy and the Court is urged to take an affirmative step to combine his case (of which he is the lone member for trial) with another case charged more than a year before his own. The Court finds that curative jury instructions are insufficient to remedy the prejudice here that falls within the description of "spillover evidence," but is really more far-reaching that the ill that term ordinarily describes.

The potential prejudice to these defendants must be balanced against competing societal goals of efficient and speedy trials. United States v. Davis, 707 F.2d 880 (6th Cir.1983). A single joint trial is impermissible if it violates a defendant's right to a fundamentally fair trial. See e.g., Fed. R. Crim. P. Rule 14; United States v. Licavoli, 725 F.2d 1040, 1051 6th Cir. 1984) (citing Barton v. United States, 263 F.2d 894, 898 (5th Cir.1959)); United States v. Echeles, 352 F.2d 892, 896 (6th Cir. 1965). This Court is not persuaded that a joint trial is appropriate given the extensive record in the Ramirez case, the current Jordan case, the predecessor Jordan case (3:06-CR-102) and

14

the predecessor Skinner case (3:06-CR-100). Nor is there sufficient evidence to indicate any substantial duplication of witnesses, but rather an indication of different witnesses against Willyard. This conclusion is only reinforced by the readiness of both the United States and Willyard to proceed to trial on August 13, 2008. The United States' request to join the cases for trial was denied by verbal order at the conclusion of the July 16, 2008, hearing.

### C. Motion to Continue

After the above ruling, Attorney Reagan made an oral motion to continue the Jordan trial date, currently scheduled for August 13, 2008. This motion was joined by Attorney Harwell, Attorney McGovern and Attorney Sallee on behalf of their respective clients. All defense counsel agreed that it is in the best interest of their respective clients to continue the trial date. The Court observes that it has previously found, without objection, this case to be so unusual and complex due to the number of defendants, the nature of the prosecution that it is unreasonable to expect adequate preparation for pretrial proceedings and for the trial itself within the time limits established by the Speedy Trial Act as provided in 18 U.S.C. § 3161(h) (8)(B)(ii). [Doc. 9]. Accordingly, all time between the August 13, 2008, trial date and the new trial date is fully excludable from operation of the Speedy Trial Act. The parties agreed upon a trial date of January 20, 2009. That trial date will not be continued absent extraordinary good cause shown.

### D. Conclusion

Accordingly, IT IS ORDERED:

> 1. For the reasons stated above, the government's Motion for Joint Trial in 3:07-CR89 **[Doc. 72]** is **DENIED**; and 3:07-CR-44 **[Doc. 262]** is **DENIED**.

2. The trial of Willyard in <u>Ramirez</u> 3:07-CR-44 remains set to commence **August 13, 2008, at 9:00 a.m.** before the Honorable Thomas W. Phillips, United States District Judge.

3. The defendants' joint oral motion to continue the trial date for <u>Jordan</u> 3:07-CR-89 is **GRANTED**.

4. The trial of <u>Jordan</u> 3:07-CR-89 is reset to commence on **January 20, 2009, at 9:00 a.m.** before the Honorable Thomas W. Phillips, United States District Judge.

5. A pretrial conference for <u>Jordan</u> 3:07-CR-89 is set for **January 13, 2009, at 9:30 a.m.**, before this Court.

6. As to <u>Jordan</u> 3:07-CR-89, all time between the **August 13, 2008**, trial date and the new trial date of **January 20, 2009**, is fully excludable from the Speedy Trial Act for the reasons stated herein.

7. The Clerk of the Court is directed to enter this Joint Memorandum and Order in both <u>United States v. Jordan</u>, et al. 3:07-cr-89 and <u>United States v. Ramirez</u>, et al. 3:07-CR-44.

**IT IS SO ORDERED.**

ENTER:                                    ENTER:

    s/ H. Bruce Guyton                       s/ C. Clifford Shirley, Jr.
United States Magistrate Judge        United States Magistrate Judge